disagreement with the Plaintiff's constitutional right to receive donations for playing the flute in a public park.

97. The harassment, NOVs, and criminal summonses were a content based restriction that served no compelling governmental interest.

98. The ticketing and harassment were not narrowly tailored to accomplish any compelling governmental interest, nor were they a reasonable restriction on the time, place and manner of his protected speech.

99. The Defendants' harassment and ticketing of the Defendant was not narrowly tailored to serve its proffered interests in alleviating pedestrian congestion and enhancing the aesthetic value of Battery Park. There is no evidence that Mr. Belpasso's flute playing and seeking donations caused attracted large crowds or prevented the free flow of pedestrian traffic in Battery Park. Nor is there evidence that Mr. Belpasso's presence near the Sphere lessened the aesthetic value of Battery Park.

100. The Plaintiff is no longer able to perform in Battery Park, and has no ample alternative channels of communication. Mr. Belpasso specifically chose to perform by the Sphere in Battery Park in order to continue his tribute to those that lost their lives in the September 11, 2001 terrorist attacks, including his family member. The Defendants persistent ticketing and harassment has been deprived the Plaintiff access to the Sphere where he can properly perform his music, and there are no other locations in New York City parks that provide an adequate replacement.

101. The Defendants acted intentionally or negligently with callous disregard for Mr. Belpasso's clearly established rights. Because of the Defendants violations of Mr. Belpasso's constitutional rights, he has suffered severe and substantial damages. Those damages include

17

physical injury to his ankle, lower leg and chest, heart irregularity, lost business opportunities, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

**COUNT TWO**
**Constitutional Violations pursuant to 42 U.SC. § 1983**
**Violation of Plaintiff's Fourteenth Amendment Due Process Rights**
**(Against all Defendants)**

102. The foregoing allegations are incorporated as if re-alleged herein.

103. The 2010 EMV rules, as applied to the Plaintiff, violated his Fourteenth Amendment rights in that they were unconstitutionally vague.

104. The Defendants interpretation of the definition of expressive matter as contained in RCNY § 1-05 in the 2010 EMV rules was unconstitutionally vague, and implicates the Plaintiff's First Amendment rights. Thus, the Defendants' application of RCNY § 1-05(b), as it stood in 2010, warrants greater scrutiny.

105. The language of RCNY § 1-25 in the 2010 EMV rules failed to provide a person of ordinary intelligence a reasonable opportunity to understand that musical performers may only perform in designated locations in Battery Park. RCNY § 1-02 defined expressive matter as "materials or objects with expressive content, such as newspapers, books, or writings, or visual art such as paintings, prints, photography, or sculpture."

106. RCNY § 1-02 made no mention of performing or playing a musical instrument. Thus, the regulation fails to give adequate notice to the Plaintiff that playing a flute in Battery Park is vending expressive matter that can only be done in one of the designated locations outside of the park as described in RCNY § 1-05(b)(3)(ii).

107. The very fact that the Parks Department had to issue revised rules in order to clarify RCNY § 1-02 to add "entertainers" to the list of expressive matter activities highlights the fact that the 2010 EMV rules were unconstitutionally vague as applied to Plaintiff.

108. The 2010 EMV rules were also unconstitutionally vague in that they failed to give minimal guidance to the Defendants so as to prevent arbitrary and discriminatory enforcement of the rules.

109. Because Defendants were allowed to add musical performance to the list of specifically enumerated activities that are expressive matter under RCNY § 1-05(b), the potential for arbitrary and discriminatory enforcement, which occurred here, was great.

110. Mr. Belpasso was issued NOVs and criminal summonses under RCNY § 1-05(b), for failing to vend in a designated spot, and failing to comply with PEP officers' directives to vend in a designated spot, all in violation of his Fourteenth Amendment Due Process rights, because the 2010 EMV Rules were unconstitutionally vague.

111. Because of the Defendants violations of Mr. Belpasso's Fourteenth Amendment Due Process rights, he has suffered severe and substantial damages. Those damages include physical injury to his ankle, lower leg and chest, heart irregularity, lost business opportunities, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

**COUNT THREE**
**Constitutional Violations Pursuant to 42 U.S.C. §1983**
Violation of Plaintiff's Fourteenth Amendment Substantive Due Process Rights
(Against Sergeant Charlemagne, Captain Cruz)

112. The foregoing allegations are incorporated as if re-alleged herein.

113. Sergeant Charlemagne and Captain Cruz, ordering the malicious conduct of the unknown Parks' employees, violated the Plaintiffs 14th Amendment Substantive Due Process guarantee to be protected from conscience shocking exercises of power by governmental actors.

114. Sergeant Charlemagne and Captain Cruz's malicious and sadistic conduct of harassing, intimidating, and supervising and directing Parks' employees to physically kick the Plaintiff in the ankle, lower leg and chest, was employed for the very purpose of causing harm to him, and to prevent him from exercising his First Amendment rights to play the flute in Battery Park.

115. Sergeant Charlemagne and the unknown Parks' employees acting under direction of Captain Cruz caused injury to the Plaintiff.

116. Captain Cruz's malicious ordering of the unknown Parks' employees' to harass, intimidate and kick the Plaintiff on multiple occasions shocks the conscience.

117. On October 21, 2011, Sergeant Charlemagne kicked the Plaintiff's lower ankle and back of his shoe in order to push him from the waterfront area of Battery Park to the outside of the park. Officer Charlemagne's deliberate and malicious conduct shocks the conscience.

118. Because of Sergeant Charlemagne and Captain Cruz's violation of the Plaintiff's Fourteenth Amendment Substantive Due Process Rights, the Plaintiff has suffered severe and substantial damages. Those damages include injury to his ankle, heart irregularity, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

### COUNT FOUR
### Violations of Constitutional Rights Pursuant to 42 U.S.C. § 1985
### Conspiracy to deprive the Plaintiff of his Constitutional Rights
### (Against all Defendants)

119. The foregoing allegations are incorporated as if re-alleged herein.

120. The Defendants actively conspired to deprive the Plaintiff of his First and Fourteenth Amendment rights.

121. Overt action was taken by Officer Pomposello on September 10, 2011, when he issued an NOV to the Plaintiff, who was not vending any materials or goods, for not vending in a designated area of Battery Park.

122. A meeting of the minds was clearly present when the Defendants escalated their campaign to prevent the Plaintiff from lawfully playing his flute in Battery Park for donations.

123. Mr. Belpasso was approached several times between September 2011 and December 2011 by Officers Pomposello, Dorsaint, Flaherty, and Iener, who demanded that the plaintiff stop playing the flute and leave Battery Park.

124. Officers Pomposello, Dorsaint, Flaherty and Iener all issued NOVs and summonses against the Plaintiff in violation of his rights.

125. Sergeant Charlemagne, with Officer Dorsaint present, attacked the Plaintiff and kicked him in the lower ankle and back of his foot until he left Battery Park. Sergeant Charlemagne then directed Officer Dorsaint to issue an unlawful NOV against the Plaintiff for unauthorized vending and staying in a location longer than necessary to conduct a transaction.

126. Officer Iener, knowing that the Plaintiff was within his rights to perform in Battery Park, maliciously issued criminal summonses against the Plaintiff after Mr. Belpasso informed him that he would challenge an NOV and have it dismissed.

127. In the most egregious act of the conspiracy, clearly establishing a meeting of the minds among the Defendants, Mr. Belpasso was physically attacked by unknown Parks' employees under the direction and supervision of Captain Cruz.

128. The Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for the Plaintiff's rights and are therefore liable for punitive damages in addition to compensatory and punitive damages.

**Liability of the City of New York for violations of the Plaintiff's rights, pursuant to *Monell***

129. The foregoing allegations are incorporated here as if re-alleged herein.

130. The City of New York is liable to the Plaintiff for the unconstitutional acts of its employee PEP officers and Parks Department officials.

131. The City of New York adopted an unwritten official policy to deprive the Plaintiff of his constitutional rights.

132. Top officials at the Parks Department, directed and oversaw the unlawful NOVs issued against the Plaintiff, and the physical attacks undertaken by unknown Parks' employees against the Plaintiff.

133. Sergeant Charlemagne kicked the Plaintiff repeatedly, then directed Officer to Dorsaint to harass and issue NOVs against the Plaintiff, who was lawfully exercising his First Amendment rights to play his flute in Battery Park.

134. Officers Pomposello and Flaherty issued repeated warnings and NOVs to the Plaintiff, all in violation of his First Amendment rights.

135. Captain Cruz, in charge of enforcement policy and the actions of PEP officers, directed Officer Iener to issue criminal summonses against Mr. Belpasso for exercising his First Amendment rights, knowing that unlawful NOVs would not stand up in administrative court.

136. Upon information and belief, Captain Cruz ordered the violent attacks against Mr. Belpasso committed by the unknown Parks' employees.

137. Mr. Belpasso challenged all of the NOVs and criminal summonses in administrative court, putting the City of New York on notice of the violations of his constitutional rights.

138. Around the same time, PEP officers and Parks Department officials were issuing illegal summonses against performers in other parks throughout the City, including Washington Square Park.

139. All of the aforementioned conduct by the Defendants shows a widespread pattern of conduct that constitutes a custom and usage with the force of law, and the acquiescence of senior policy making officials, all of which caused the deprivation of the Plaintiff's constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Philip Ralph Belpasso seeks judgment against Defendants as follows:

A. For appropriate compensatory damages in an amount to be determined at trial;

B. For appropriate pecuniary and punitive damages in an amount to be determined at trial;

C. For declaratory relief proclaiming that the Plaintiff's constitutional rights were violated, that the December 12, 2011 Notice of Violation is null and void, and that the $250 fine for the Notice of Violation is null and void; and for declaratory relief that the Expressive Matter Rules are unconstitutionally vague as applied to the Plaintiff;

D. For appropriate equitable relief, including enjoining and permanent restraining of these violations; and

E. For such and further relief the Plaintiff may show himself to be justly entitled.

Respectfully Submitted,

By _____
Counsel for the Plaintiff

Ari Ambrose
474 W. 158th St. #21
New York, NY 10032
(718) 607-9511
Ariam73@gmail.com